THE LAW OFFICES OF MARK S. SMITH
456 West O'Brien Drive, Suite 102-D
Hagatna, Guam 96910
Telephone: (671) 477-6631/32
Facsimile: (670) 477-8831

Attorney for Defendant:
*Albert P. Mendiola, Jr.,*

FILED
DISTRICT COURT OF GUAM
JAN 12 2007
MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO.: 05-00011 |
| Plaintiff, ) | |
| vs. ) | SENTENCING MEMORANDUM |
| ALBERT P. MENDIOLA, JR., ) | |
| Defendant. ) | |

## SENTENCING MEMORANDUM

COMES NOW, Defendant, ALBERT P. MENDIOLA, JR., by and through his counsel of record, Mark S. Smith, Esq. and hereby moves this Honorable Court to grant a variance from the United States Sentencing Guidelines, Probation's recommendation in the final Pre-Sentence Investigation ("PSI") Report and the Government's recommendation of a sentence of seventy (70) months. This request is based on the Points and Authorities attached hereto.

DATED this 11th day of January, 2007.

Respectfully submitted,

By: _____
MARK S. SMITH, ESQ.

CM/Mendiola.A:sentencing memorandum

**ORIGINAL**

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE CASE

On February 9, 2005, an indictment was obtained charging Defendant Albert Portusach Mendiola, Jr., (hereinafter, "Albert" and/or "Defendant") for violation of Title 21 U.S.C. §841(a)(1), 841(b)(1)(A)(viii) and 846 Conspiracy to distribute methamphetamine hydrochloride and attempted possession with intent to distribute methamphetamine hydrochloride Title 21 U.S.C §841(a)(1), 841(b)(1)(A)(viii) and 846 and Title 18 U.S.C. §2.

At this time, Defendant was residing in Las Vegas, Nevada and voluntarily surrendered himself when arrested by U.S. Drug Enforcement Administration Agents in the District of Nevada. Defendant was released on his personal recognizance to voluntarily return to Guam. He traveled to Guam unescorted by any DEA Agents.

Upon his return from Guam, Defendant cooperated with the court and federal officials by appearing before court and reporting to the United States Probation as ordered.

Since voluntarily surrendering himself to DEA Agents, Defendant has followed the terms and conditions of his release, appeared before the court voluntarily, and cooperated with Government officials with every opportunity provided.

The relevant facts of Albert's criminal case is as follows: Sometime in January 2005, Albert along with others, who were also charged and recently sentenced, were involved in drug distribution whereby Albert arranged for crystal methamphetamine hydrochloride to be sent via U.S. Postal carrier to his brother, Paul Mendiola, who would then receive said package and sale the drugs on the streets. Paul Mendiola was recently sentenced and received sixty-five (65) months for his role in the drug conspiracy and distribution of crystal methamphetamine hydrochloride.

Since Albert's arrest, approximately Twenty-Five Thousand Nine Hundred Fifty Dollars ($25,950.00) was seized from his residence and he chose not to contest any forfeiture proceedings with respect to said money. In addition to his release, he has followed all the terms and conditions of his release and has tested negative for drug use on all occasions when tested by the U.S. Probation Office.

Defendant is a proud father of a two and a half (2 ½) year old son named Tristan Mendiola. His high school sweetheart and fiancé is Emily Pangelinan who is the mother of said child. Both wish to raise their son together and to have more children in the near future. They believe the family unit is indispensable to raising responsible and healthy children.

It is their hope that if a sentence of incarceration is issued that it be minimal so that Albert can be released as soon as possible and attend to the responsibilities of raising his family. In the alternative, if there is no incarceration, the least restrictive forms of release conditions be imposed. This will allow both Albert and Emily to keep their family intact and raise their son.

Albert is a good person with no criminal history and is a positive young man. He has excellent relations with his co-workers and those exposed to him. Attached are numerous recommendations from reputable people in the community and others that Albert has worked with.

Honorable Judge B.J. Cruz, a former Justice of the Superior Court of Guam and well respected Senator speaks highly of Albert and his endeavors as a young man. He was shocked to hear of Albert's criminal case and believes a sentence of probation would be satisfactory in light of Albert's history and the crime charged. In addition to the Honorable B.J. Cruz, a well known Pastor and respected educator on Guam, Paul Pineda, has provided a letter of recommendation shedding light on the personality and the good nature of Albert. He discussed how Albert, when confronted with challenges, would keep focused and do what is necessary to accomplish said goal. He also notes that Albert is a good person and believes that he should be given a second chance. Albert

works at Pacific American Title Company and received praise from his employer Eileen Alfred, the General Manager of Pacific American Title Company. She also writes about the good nature of Albert and his strong work ethic. Mayor Jesse Palican also provides words of support for Albert. Common theme of all recommendation letters is that Albert is a good person who made a poor decision as a young man and should be allowed an opportunity to lead a good life.

## ALBERT SHOULD RECEIVE A REASONABLE SENTENCE IN CONSIDERATION OF HIS UNIQUE CHARACTERISTICS BASED ON U.S. v. BOOKER AND 18 U.S.C. §3553(a)

In Booker/Fanfan, the Supreme Court held that the Sentencing Guidelines must be considered merely as "advisory" and is only one of the sentencing factors to be used in conjunction with those listed for consideration during sentencing in 18 U.S.C. § 3553(a). 125 S.Ct. 738, 750 (2005). Under the Sentencing Reform Act, specifically 18 U.S.C. 3553(b)(1), the Guidelines were mandatory in nature, requiring courts to impose sentences based on the Offense Level, Criminal History Category, and Guideline range as provided for in the Guideline sentencing table. Yet, in Booker, the Court held that 18 U.S.C. § 3553(b)(1) and 18 U.S.C. § 3742(e), which made and were dependant on the Guidelines' mandatory nature, "must be severed and excised." Id. at 756.

Although the Congressional intent in enacting the abovementioned statutes was to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities, "Congress also sought to maintain "sufficient flexibility to permit individualized sentences when warranted." Id. at 767, citing 28 U.S.C. 991 (b)(l)(B). As noted in the Guidelines themselves, the purposes of the guidelines were to promote "honesty," "uniformity," and "proportionality" that would appropriately impose "different sentences for criminal conduct of different severity." U.S.S.G. §1A1.1, app. nt 3. Yet, it is also noted that "[perfect] uniformity...destroys proportionality." Id. Implicit in this note, is the notion that sentences require proportionality based on factors not considered by the Sentencing Commission which may undercut

the goal of uniformity of the Guidelines. Thus, the Guidelines are now merely "advisory" and while judges must "consult [the] Guidelines" when sentencing, they are not bound to apply them. Booker, 125 S. Ct. at 767.

Implicit in the goal of proportionality in sentencing is the requirement that the sentence be reasonable. To achieve this, the legislature has stated that sentencing judges shall consult section 3553(a) which sets forth factors to take into account in delineating a sentence. These factors include: the need for the sentence to reflect the seriousness of the offense and to provide just punishment for such, the need to protect the public from further offenses of the defendant, the need to provide the defendant with needed medical care or correctional treatment in the most effective manner. 18 U.S.C. 3553(a)(1-3). Furthermore, judges must also consider the nature of the offense along with the character and history of the defendant. Id.

In the case at hand, Albert pleaded guilty to conspiracy to distribute crystal methamphetamine hydrochloride which is a serious offense. The nature of the offense is one factor among the many that the court must consider.

The court also looks into the character and the history of the Defendant. The Pre-Sentence Investigation Report reflects Albert's cooperation with the Government, putting himself in harms way for purposes of assisting the Government in its investigations. Defendant's criminal history is not more than one criminal history point and excluding this conviction, has an impeccably clean record.

The court also considers protection of the public from further offenses of Defendant. As stated in the Pre-Sentence Investigation Report, Defendant has shown extreme remorse and regrets his decision. He understands the embarrassment this has caused him and his family. He is suffering emotionally and mentally because he knows that without him around, his son and the mother of his child, will suffer without his financial assistance and emotional support. He is in fear that his son

will grow up not knowing his father and that these formative years which are critical to the mental growth of a child will be lost forever. From Defendant's criminal history as well as his remorse, it is clear that Defendant will not commit further offenses and has fully learned his lesson.

The courts also look at providing medical care or correctional treatment to Defendant in the most effective manner. Although Albert stated he did not believe he has a drug problem, after careful deliberation and review of the situation and acceptance of his problems, he understands that he has a drug use problem and respectfully requests the court to provide him the opportunity to seek medical treatment. More specifically, enrollment into the medical drug program provided for qualified defendants. Albert believes there is reasonable likelihood that he will successfully complete the treatment program if granted this opportunity. He has met with Dr. Clare Ashe on several occasions and she recommends a lenient sentence. Once she submits her recommendation letter counsel will file with court.

In determining Defendant's sentence, the court must also look at providing the sentence which reflects the seriousness of this offense and to provide just punishment. While justice should be individualized for each Defendant, there should not be sentencing disparities between similarly situated Defendants. Koon v. United States, 518 U.S. 81, 113 (1996)("the goal of the sentencing commission is, of course, to reduce any justified disparities and so reach toward the even handedness and neutrality that are distinguishing marks of any principal system of justice.")

In recent cases involving investigation by Federal Law Enforcement Authorities of mailing and distribution of crystal methamphetamine hydrochloride drugs "ice" from the mainland U.S. into the Territory of Guam for sale between November 2004 and June 2005. Approximately five (5) young men from Guam were sentenced in cases factually similar to Albert's.

Recently, in the case of Jared Elm, he received one (1) day and probation, Brian Elm who went to trial, eighty-four (84) months or seven (7) years, Christopher Espinosa, who did not cooperate or testify and the main person who pleaded in the criminal conspiracy among these young men received eighty-seven (87) months or seven point three (7.3) years and Erik Aponik received forty-eight (48) months or four (4) years.

Most recently, Jonathan Canovas was sentenced to two (2) years after a recommendation by the Government for one hundred fifty one (151) months or twelve and a half (12 ½) years. The court in that case considered the co-defendants sentence as well as the nature and circumstances of the offense, Canovas' character and history, and his substantial assistance to the Government. Similarly, Albert is requesting the court to take these matters into consideration and respectfully requests a non-guideline sentence of twenty-four (24) to thirty (30) months imprisonment.

### PROPOSED STATEMENT OF REASONS FOR NON-GUIDELINE SENTENCE PURSUANT TO 18 U.S.C. §3553(a)

Albert respectfully submits this statement for reasons for imposing a non-guideline sentence under base offense level 17 or a sentence of twenty-four (24) to thirty (30) months imprisonment.

Applying non-guideline sentencing range of level 17 to Defendant's case and consideration of 18 U.S.C. §3553(a) factors, Defendant respectfully concludes a non-guideline sentence of twenty-four months (24) to thirty (30) incarceration followed by a term of supervised release for a term of not more than five (5) years is warranted for Defendant because:

1. Defendant was not an organizer, leader, manager or supervisor;

2. Defendant is a young man, first time offender, with a family and a young son to raise and his involvement appears to be out of character for him and unlikely that he would commit this sort of conduct again. He has suffered emotionally and has sought counseling; and requested drug treatment;

3. Defendant, upon being apprehended, voluntarily surrendered and after release on his personal recognizance returned to Guam voluntarily and submitted to authorities on every occasion and tested negative for any drug use while under probation for approximately two (2) years;

4. Defendant provided assistance to the Government, and put himself in harms way on numerous occasions to provide said assistance;

5. Defendant has shown extreme remorse for his role in the criminal offense including the harm and embarrassment caused to his family and the community;

6. The guidelines sentence of twenty-four (24) to thirty (30) months incarceration is consistent with other young men who were recently sentenced with similar crimes as Albert and sentenced within the last year.

7. The Defendant's educational and family history shows that he has a strong likelihood of rehabilitation and leading a successful, productive life upon on release from incarceration;

8. Defendant asserts that a non-guideline sentence of twenty-four (24) months to thirty (30) months reflects the seriousness of the crime, promotes respect for the law, affords adequate deterrence of criminal conduct, and will provide the Defendant the time and opportunity to seek needed medical assistance and rehabilitation;

//

//

//

//

## CONCLUSION

For the foregoing reasons, Defendant Mendiola respectfully submits that a non-guideline sentence of twenty-four (24) to thirty (30) months followed by a term of supervised release for not more than five (5) years is sufficient, but not greater than necessary, to comply with the statutory directive as set forth in 18 U.S.C. §3553(a).

Dated this 11th day of January, 2007.

Respectfully submitted:

By: _____
MARK S. SMITH, ESQ.



# Senator Benjamin J.F. Cruz
*I Mina'bente Ocho Na Liheslaturan Guahan*

Pan American Building., Suite 100
139 Murray Blvd., Hagåtña, Guam 96910
Telephone: (671) 477-2520/21   Facsimile: (671)477-2522

November 9, 2006

Honorable Frances Tydingco-Gatewood
Chief Judge
District Court of Guam
Hagatna, Guam

Re. USA vs. Albert P. Mendiola Jr. CR05-00011

Dear Chief Judge Tydingco-Gatewood:

I am writing to respectfully request your compassion and leniency in your sentencing of Mr. Albert Portusach Mendiola, Jr. I have known the Portusach and Mendiola families for many years and became familiar with Albert from his sports activities.

I lost track of Albert after his graduation and renewed my acquaintance when he began accompanying his uncle Billy Cruz to my pocket meetings. He always impressed me as being a very polite and helpful young man.

I was shocked when he asked me to assist him with a letter-recommending leniency. He did not behave like any of the young felons I recall coming before me. We discussed politics, his baby boy Tristan Cole, his job at Pacific American Title and helping out in the campaign. He did not look or behave like a young man involved in drugs.

I know that he has entered a guilty plea before your court. His attorney has informed me that a sentencing hearing is scheduled for late November. Albert and his attorney have informed me that Albert has been cooperative since the inception of this case. Mr. Mark Smith informed me that Albert did not fight extradition and flew back to Guam on his own accord to face the charges in this case. Both assure me that Albert has complied with the conditions of his release and has not tested positive for any illegal substances since his release.

You know that I am always willing to give a young man a second chance if he looks like a candidate that will successfully complete his probation and has learned from a stupid youthful indiscretion.

Albert and I have had many conversations about his future and the need to learn from our mistakes. I feel confident that Albert, with the support he has from his family will be able to successfully complete a significant term of probation with strict conditions and that he will not be returning to any courtroom as a defendant.

I am therefore respectfully requesting that you exercise the compassion I know you to have and impose a strict sentence on Albert Mendiola that does not include actual jail time so that he can continue to grow to be a productive young citizen in our community and care for his family.

Sincerely,

*[signature]*

BENJAMIN J.F. CRUZ



# SAINT PAUL CHRISTIAN SCHOOL

P O Box 7121 Tamuning, Guam 96931
Tel: (671) 637-9855  Fax: (671) 637-2697

November 17, 2006

Hafa Adai! My name is Paul A. Pineda, President and Founder of Saint Paul Christian School. Over the last 8 years I have come to know Albert Portusach Mendiola Jr. as his coach, teacher and friend. In 1998, Albert or AJ as we called him, transferred to SPCS. He made an immediate impression with his humility, his optimism, and his million dollar smile.

During those early days, starting SPCS was a challenge. Many times I felt like throwing in the towel, it was AJ who would always ask if I was ok. He never ceased to encourage me and during his time at SPCS I have seen him grow to be a leader among his peers. He affirmed me time and time again that students considered SPCS a safe haven, a place of refuge, and a place where learning really did take place.

When I learned about AJ's indictment, I was very disappointed. What mentor wouldn't be? But one thing I knew for certain, was AJ's willingness to admit to his mistake and take full responsibility for his actions. In our last few conversations, he has expressed to me a desire to make things right and that he has become a better person because of his mistakes.

I am most proud of the steps he has taken since then to continue to provide for his son, Tristan Cole. He works at Pacific American Title Co. where I am told he has been a wonderful employee and a pleasure to work with.

As a Minister, I have seen first hand the incredible power of God's love and forgiveness. The Bible speaks volumes of the redemptive power of the Lord. Romans 3:23 states "For *all* have sinned and fall short of the glory of God." Remarkably, even the Lord is rich in mercy, grace, and forgiveness. In this entire process of brokenness, AJ's only hope has been his faith in God and support from family and friends. Where would any of us be without second chances? It is during the trials and testing, that our character is refined and renewed.

It is my prayer that you too would afford AJ the opportunity to learn from this experience, to move on to be a productive member of our society, and to provide the best life possible for his son, Tristan. Thank you for your kind consideration.

Blessings,

Reverend Paul A. Pineda
President, SPCS
Senior Pastor, Saint Paul Assembly of God

"…Whatever you do, do it all for the glory of God."
I Corinthians 10:31

# PACIFIC AMERICAN
## TITLE INSURANCE & ESCROW COMPANY
### THE CLOSING PROFESSIONALS



November 17, 2006

Honorable Francis Tydingco-Gatewood,
District Court of Guam
4th Floor US Courthouse
520 West Soledad Avenue
Hagatna, Guam 96910

Dear Judge Tydingco-Gatewood,

We write this letter on benefit of Albert P. Mendiola, Jr.. Mr. Mendiola has been employed with Pacific American Title Insurance & Escrow Co since August 2005. He had originally started out as our company messenger, however was promoted to a title researcher trainee. Since then, he has become a title researcher, in such a short period of time

Mr. Mendiola is young but has such potential to become a strong researcher and will be asset for our company. He is a productive individual and should be able to continue to contribute to our society.

When you are in the position to make the decision pertaining to Mr. Mendiola' future, we humbly ask for your consideration in granting leniency.

Sincerely yours,

PACIFIC AMERICAN TITLE INSURANCE & ESCROW CO.

AILEEN KIER ALFRED
President

cc: file

715 Chalan Machaute, Suite 101 Route 8, Maite Guam 96910
Tel: (671) 477-7210 / 11 / 16 • Fax: (671) 477-7213 • Email: *patico@pamericantitle.com*

Case 1:05-cr-00011   Document 108   Filed 01/12/2007   Page 13 of 14

 

# MUNICIPALITY OF BARRIGADA
OFFICE OF THE MAYOR & VICE MAYOR
124 Luayao Lane, Barrigada, Guam 96913

**JESSIE B. PALICAN**
MAYOR

**JUNE U. BLAS**
VICE MAYOR

## RECOMMENDATION

This is to recommend favorable consideration of Albert Portusach Mendiola, Jr. a Barrigada resident, for leniency with regard to his sentencing, which is currently before the U.S. District Court of Guam. Albert was born and raised in Barrigada and is known to me by his parents MaryAnn (mother) & Jess Aguon; and Albert (father) & Eva Mendiola. He grew up in the village, with family and neighbors who taught him to cherish and practice our island culture and to value honesty, integrity, and love of community.

Albert represented the Municipality of Barrigada (1998-2001), as a member of the Barrigada Spurs District Basketball Team, successfully managing to also play high school basketball varsity before graduating St. Paul Christian School in June 2000. Upon returning from Nevada with his common law wife Emily and infant son Tristan in 2005, Albert rejoined his parents' household at 156 Adacao Avenue, Barrigada, where we have observed him to be a good husband, father, neighbor, and contributing member of our community.

Further, we believe Albert's expression of remorse over this first time offense, combined with his strong ties to his family and his community are factors worthy of consideration.

Respectfully submitted by:

*[signature]*
JESSIE B. PALICAN

P.O. Box 786 Hagåtña, Guam 96932 ◆ Tel: (671) 734-3737 ◆ Fax: (671) 734-1988

Case 1:05-cr-00011   Document 108   Filed 01/12/2007   Page 14 of 14